# Richmond

CLYDE R. ROYALS, TRADING AS CLYDE R. ROYALS COMPANY
v. PLANTERS MANUFACTURING COMPANY, INC.

May 1, 1944.

Record No. 2763.

Present, Campbell, C. J., and Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Rixey & Rixey*, for the plaintiff in error.

*Venable, Miller, Pilcher, Parsons & Kyle*, for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

Clyde R. Royals, trading as Clyde R. Royals Company, brought this action by notice of motion to recover damages

suffered as the result of a collision between a motor truck belonging to him and a motor truck belonging to the defendant, Planters Manufacturing Company, Inc. The defendant filed a cross-claim for the damage to its truck.

Upon the trial, instructions relating to the duties of the respective drivers, negligence as a proximate cause of the collision, and contributory negligence were given to the jury. The jury found a verdict for the plaintiff for $830.97, the amount of the damages claimed by him. The court set aside the verdict and rendered final judgment for the defendant, holding that the plaintiff was guilty of contributory negligence as a matter of law.

The plaintiff contends that the court erred in refusing to enter judgment in his favor in accordance with the jury's verdict.

The defendant assigns cross-error to the refusal of the court to grant four instructions, in addition to the eight given by the court, four at the request of the plaintiff and four at defendant's request.

A brief summary of the evidence, in narrative form, has been certified to us.

The collision occurred on December 3, 1943, about dusk in the afternoon. Lights were burning on both vehicles. The plaintiff's vehicle was an empty Ford truck with a dump body; the defendant's was a truck heavily loaded with logs. The point of the collision was on State Highway No. 58, near its intersection with State Highway No. 337, in Norfolk county, Virginia, running between Portsmouth and Suffolk. The locale is shown on the accompanying diagram.

Route No. 58 from the intersection towards Suffolk and Route No. 337 from the intersection towards Portsmouth are three traffic lanes in width. The other portions of the roads are each two traffic lanes in width. Each lane is hard surfaced. There are stop signs on Route No. 337 on each side of the intersection; but there is none on Route No. 58. In the angle formed by the intersection of the two roads, in the direction of Suffolk, is what is called an island, triangular

in shape, and a third road connecting the two roads, as shown on the diagram. Grass and shrubbery grow on the island. From the intersection, Portsmouth is, generally speaking, to the east and Suffolk to the west.

The driver of plaintiff's truck testified that he was travelling westerly along Route No. 337 from Portsmouth; that as he approached the intersection he desired to continue to Suffolk along Route No. 58; that he came to a full stop opposite the stop sign before entering the intersection and, looking towards the west, saw the defendant's truck approaching; that after giving the proper signal for a left turn, when the defendant's truck was approximately 450 feet away, he proceeded into the intersection, keeping well over to his right; that his vehicle had entirely completed its turn, had entirely cleared the intersection, and was beside the island as far to his right as he could get, with his right wheels off the hard surface of the three-lane road, when the defendant's truck

came over to his side of the road and struck the left corner of his truck with the left front corner of the defendant's truck; that the latter truck stopped on the island east of him headed north, and the cargo of logs rolled off on the island at the east end; and that, according to his judgment, the defendant's truck was travelling "approximately" 45 miles an hour.

J. W. Rountree, a Norfolk county police officer, who was standing in a police station, situated to the southwest of the intersection, and looking out the window in the general direction of the point where the collision occurred, said that he did not see the plaintiff's truck until it was in the middle of the intersection; that at the time of the collision the plaintiff's truck had cleared the intersection and was beside the island as far to its right as it could get without being off the hard surface; that the defendant's truck went to its left side of the road and struck the plaintiff's truck at the left front corner with the left front corner of the log truck; and that the defendant's driver told him he was travelling 35 miles an hour, although he, the police officer, did not think he was travelling that fast.

The driver of defendant's truck testified, "I was travelling east to Portsmouth on Route 58 about fifteen miles per hour. * * * I saw the plaintiff's truck stop at the stop sign before entering the intersection. When I was about the distance from where I sit to the end of this building, the plaintiff's truck started into the intersection. I thought he would keep on across, but instead of doing so he turned to his left to go east (meaning west) on Route 58. The accident occurred opposite the island. The accident occurred on my left side of Route 58. The accident occurred about in the center of Route 58. The accident occurred on my right side of Route 58."

It is apparent that this was not an intersection collision. It occurred after the plaintiff's truck had entirely cleared the intersection, and before the defendant's truck had reached the intersection. The latter truck was still short of the intersection after the collision. It is further obvious from the tes-

timony of the driver of the log truck that he did not know on what side of the road the accident occurred. He agreed that it occurred opposite the island, and, therefore, after the plaintiff's truck had cleared the intersection, but he does not undertake to explain why he turned his truck to the left when there was sufficient space in front of him to proceed safely straight ahead at the speed he claimed to be driving.

The evidence makes it fairly clear that the driver of defendant's truck was guilty of negligence and that it constituted the proximate cause of the collision. Whether or not the plaintiff's driver, under all of the evidence and circumstances, was guilty of contributory negligence was a question about which reasonable men might differ, and it was, therefore, a question solely for the jury. That question was properly submitted by the instructions. The determination of the jury was conclusive and binding, and the trial court ought not to have set it aside even though it entertained a different view.

The trial court did not err in refusing to grant the additional instructions offered by the defendant.

Instruction number 1-D was erroneous in that it undertook to have the court tell the jury that the failure of the plaintiff's driver to perform certain duties "was the sole proximate cause of the accident." Whether or not such negligence, if proven, constituted the sole proximate cause of the collision was a question for the jury and not for the court.

There was no evidence upon which to base instructions numbered A-D and 5-D. 7-D is an incomplete statement of the law. The instructions granted covered all of the questions raised under the evidence.

The facts in this case readily distinguish it from *Garrison* v. *Burns*, 178 Va. 1, 16 S. E. (2d) 306, relied on by the defendant. In that case, the driver of a car failed to give a proper signal before he drove into a main State highway from a dirt side-road in front of an approaching automobile in plain view, and his car was struck within the intersection while making a left turn.

For the foregoing reasons, the judgment of the trial court is reversed, the verdict of the jury reinstated, and final judgment entered thereon in favor of the plaintiff.

*Reversed and final judgment.*